The People *ex rel.* Murphy agt. French *et al.*

## SUPREME COURT.

THE PEOPLE *ex rel.* JOHN MURPHY agt. STEPHEN B. FRENCH *et al.*, composing the board of police of the city of New York.

*New York (city of) — Police board — their power as to dismissal of a member of the force.*

The relator, a policeman, having been convicted by the police board upon a charge of receiving sums of money on several occasions from the keepers of a house of prostitution as an inducement for allowing certain privileges, was dismissed from the force:

*Held,* that under the law of 1873, giving the board power to dismiss any member on his conviction of a legal offense or neglect of duty, or any conduct injurious to the public welfare, or immoral conduct or conduct unbecoming an officer, though the relator could have been convicted

and punished for the offense, yet it was not necessary to await a conviction in a court of criminal jurisdiction before instituting the inquiry. There being evidence to uphold the judgment of the board, and no rule of law having been violated, the judgment should not be disturbed.

*Special Term, February,* 1881.

WRIT of *certiorari* to review the removal of the relator from the police force.

*John D. Townsend,* for relator.

*William C. Whitney,* opposed.

VAN VORST, *J.* — By the Laws of 1873, chapter 335, section 5, the board of police have power, in its discretion, to dismiss from the force any member thereof, on his conviction of any legal offense or neglect of duty, or violation of rules, or neglect or disobedience of orders, or any conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer.

It cannot be questioned for a moment that the offense charged against the relator, a member of the force, of receiving sums of money on several occasions from the keeper of a house of prostitution as an inducement for allowing certain privileges in connection with the maintenance of such a house, involved him in immoral conduct unbecoming an officer. It was also, under the rules governing the force, a neglect of duty and clearly injurious to the public welfare. If such conduct could be tolerated it would lead to the demoralization of the entire police force and make it a bane rather than instrument of security. It is quite likely that a member guilty of such practices could, in some legal proceeding in the courts, have been, upon trial, convicted and punished for the offense. But it cannot be necessary, as is urged by the counsel for the relator, for the board of police to await a conviction for the offense in a court of criminal jurisdiction before instituting an

The People *ex rel.* Murphy agt. French *et al.*

inquiry into the alleged misconduct, and if it should be established, by evidence, to its satisfaction, it would be its duty to dismiss the offender. A conviction of a member of the force of a legal offense is a ground of removal, and also in its discretion, the board may remove for any neglect of duty or conduct unbecoming an officer, although such misconduct might not amount to an offense punishable in the criminal courts.

It is urged by the learned counsel for the relator, that the proof adduced before the board was insufficient to justify a removal, and the evidence, as well as the character of the witnesses in support of the charges, has been subjected to fair criticism.

It must needs be that the witnesses to such a transaction would be of a questionable character. Persons of known respectability would not be likely to be witnesses of such acts as are imputed to the relator. The relator, under oath, denies the accusation. Several persons have also testified to the good character of the relator. And one cannot but regret the necessity for his dismissal from the service. But the fact of the payment to and receipt by him of the money for the purposes above mentioned, is distinctly sworn to by the party who paid it, and her evidence is corroborated by the testimony of two other persons.

It is quite true that some persons, who are alleged by the principal witness to have been present when the money was paid to the relator, have denied any such occurrence. But these latter witnesses are open to the same criticism bestowed upon the witnesses called to sustain the charges. I cannot say that there was no evidence to uphold the judgment of the board. On the other hand there was evidence. The matter was contested. The board of police was the proper body, under the law, to pass upon the evidence, and to determine the truth amid conflicting statements.

I do not think that I would be justified in substituting my judgment for that of the police commissioners, who seem to have carefully and patiently investigated the charges, and have

had the advantage of personally seeing and examining the witnesses.

The removal seems to have secured the concurrence of all the commissioners who were present at the investigation. They acted under the responsibility of their office, and unless there was no evidence to uphold their judgment, or some rule of law had been violated, their judgment should not be disturbed.

The *certiorari* should be quashed, and the proceedings of the commissioners sustained.